IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA       §
                               §
                               §
v.                             §          C.R. NO. H-03-363
                               §
                               §
JAMES A. BROWN                 §

MEMORANDUM & ORDER

Pending is Defendant James A. Brown's Motion to Dismiss for Speedy Trial Act Violation (Document No. 1137).  After having carefully considered the motion, response, reply, and the applicable law, the Court concludes for the reasons that follow that the motion should be denied.

Brown's Initial Request to Postpone Trial for Nearly a Year,
and Brown's Agreement to an Excludable Delay Order

In November 2004, Defendant Brown was convicted by a jury of charges of conspiracy, wire fraud, perjury, and obstruction of justice.[1]  On August 1, 2006, the Fifth Circuit reversed Brown's wire fraud and conspiracy convictions on the basis that the honest services theory was flawed, and affirmed his "conviction and sentences . . . on [the] charges of perjury and obstruction of justice."  United States v. Brown ("Brown I"), 459 F.3d 509, 531 (5th Cir. 2006).  The Supreme Court later denied Brown's petition

_____

[1] Document No. 628.

for a writ of certiorari.  <u>Brown v. United States</u>, 127 S. Ct. 2249 (2007).

When the case was remanded, it landed back in the trial court with nearly all of the many complications present in the original prosecution, plus a host of new issues and complexities and, as well, new sets of lawyers for Defendants Brown and Furst.  On February 16, 2007, at the first Status Conference held after remand, all parties agreed that "we are outside the [S]peedy [T]rial [Act]" due to the complexity of the litigation:

> [Bayly's Counsel]: . . . [T]he Court has already found this is a complex case not under -- you know, we are outside the speedy trial.  It's complex litigation.  And so, I think we are beyond the sort of 70-day rule at this point.  At least that's my understanding.
>
> THE COURT: Is that the understanding of all parties?
>
> **[Brown's Counsel]: It is on behalf of Mr. Brown, Your Honor.**
>
> [Furst's Counsel]: It is on behalf of Mr. Furst, as well, Your Honor.
>
> THE COURT: That's the government's understanding?
>
> [Government Counsel]: Yes, sir.

[Transcript of February 16, 2007 Status Conference, p. 6, ll. 4-16 (Document No. 925) (emphasis added)].

Brown's new lawyer then requested that the trial date be put off for nearly a year, estimated that some two million documents were involved in the case, described how new counsel needed to

prepare their defenses "from ground up," and represented that defense counsel had pledged so far as possible to file motions jointly to save time and to make pretrial proceedings more efficient.  After detailing at length his reasons, Brown's attorney concluded:

> **[Brown's Counsel]:**  So, on behalf--and I think I speak collectively on behalf of all defendants--I request a January [2008] trial date.
>
> * * *
>
> **[Brown's Counsel]:**  Well, as the Court may or may not know, Fastow has testified twice under oath.  There has also been substantial discovery in the parallel civil matter, and that is another world of discovery literally, and a much more voluminous discovery matter for us to assimilate to suggest than we faced the first time around.  Simply put, the charges may be narrower, but there is more discovery for us to assimilate now than there was under the original theory.

[Transcript of February 16, 2007 Status Conference, p. 10, ll. 6-8; p. 14, l. 19 through p. 15, l. 1 (Document No. 925) (emphases added)].

After other defense counsel supported Brown's arguments for delay, the Court inquired:

> COURT:  Are all parties agreed then, satisfied a further excludable delay order is appropriate under these circumstances?
>
> **[Brown's Counsel]: Yes, sir.**
>
> [Furst's Counsel]: Yes, Your Honor.

[Bayly's Counsel]: Yes, Your Honor.

[Government Counsel]: Yes, Your Honor, on behalf of the government.

COURT: All right.  Then I do find then, based upon the representations made in this conference and the disclosures made both by the government and the defendant, the defendants with respect to the additional amounts of discovery involved that pursuant to 18, USC Code, Section 3161(h)(8)(B) that a failure to grant a continuance at this point, at least with the expectation of a more distant trial date, but immediately with respect to a new pretrial conference where we will at that time have the charging document and all parties will be able better to judge how long it will take to prepare for trial on that charging document that the government is going to present, I will grant a continuance for those purposes and find that a failure to do so would result in a miscarriage of justice.

Further, continuance is granted in order to permit substitute counsel, which have just joined the case, some as recently as within the past week, and to allow reasonable time for trial preparation.

I make those findings and will enter a period of excludable delay, which shall end with the commencement of trial or the disposition of the charges; and I'll sign an order to that effect without objection from any party.

Now, rather than to set a new docket control order at this time then, given the uncertainty of what the charging document will be, and second then what motions the defendants expect to file and what time is required to prepare for trial, I'll defer that until we have another pretrial conference; and this will be about 45 days from now.

[Transcript of February 16, 2007 Status Conference, p. 18, l. 10 through p. 19, l. 20 (Document No. 925) (emphasis added)].

At the next status conference, on April 4, 2007, the Court granted Brown's request for a trial date in January, 2008.

4

<u>Brown's Pretrial Activity in the Year After
the Agreed Excludable Delay Order was Entered,
and Brown's Next Motion for Continuance</u>

During the months that followed entry of the Excludable Delay Order, the parties filed 17 substantive motions.  Contrary to Brown's representation in February, 2007, Brown himself filed seven of these motions separately, supported in all by more than 500 pages of briefing.[2]  By December 19, 2007, Brown along with the other two Defendants, requested another trial continuance to permit further preparation in light of approximately 1,000 pages of recently produced transcripts of grand jury testimony and FBI Form 302s, which Defendants represented would cause "a sea change in the defense of the case," the "hope to pursue . . . settlement possibilities" with the government, the possibility that the Court's ruling on several motions may "change the scope and landscape of any trial," and because Brown's two lead lawyers were busy on other cases, one with commitments for oral arguments in the

---

[2]  *See* Defendant James A. Brown's Motion to Compel the Production of Documents and <u>Brady</u> Material (Document No. 948); James A. Brown's Motion to Dismiss Indictment (Document No. 952); James A. Brown's Motion for Jencks Material (Document No. 957); Brown's Motion for <u>James</u> Hearing (Document No. 958); Motion for Order Granting Defendant James A. Brown's Motion to Compel Production of Discovery Material (Document No. 974); Defendant James A. Brown's Motion for New Trial (Document No. 1004); and James A. Brown's Motion for Leave to Issue Fed. R. Crim. P. Rule 17(c) Subpoena *Duces Tecum* for Internal Government Documents (Document No. 1013).

Fifth Circuit the week of January 28, and the other with a separate state court trial about to begin.[3]

Meanwhile, the Court heard arguments on several pending motions at a pretrial conference on November 16, 2007, and again on December 21, 2007.  Given the large numbers of motions, voluminous briefing, and complexity of the issues, the Court prioritized the motions most urgently requiring rulings.  Among those thought to merit the highest priority were the Government's motion to remand Brown to custody, and Defendants' motions to dismiss the Indictment based on double jeopardy.  Brown himself placed the same priority on what he referred to as a "daunting list of motions":

> **[Brown's Counsel]:** Despite the daunting list of motions before the Court today, there are really only three that require immediate attention.  The first is for the Court to grant Brown's motion to dismiss the indictment, the second is to deny the Government's motion to revoke bond, and the third is to set a hearing date for Brown's motion for new trial.  The disposition of those motions, accordingly, renders everything else moot.

[Transcript of November 7, 2007 Motions Hearing, p. 5, ll. 9-16 (Document No. 1010) (emphasis added)].

The motion to revoke Brown's bond and remand him to custody was based on the Fifth Circuit's affirming Brown's "*conviction and sentences* . . . on [the] charges of perjury and obstruction of justice," Brown I, 459 F.3d at 531 (emphasis added).  The Fifth

---

[3] Document No. 1019 at 5, 2-5.

6

Circuit did not order Brown resentenced, but instead affirmed the
sentences for those crimes, which indicated that Brown has an
undischarged term of imprisonment yet to serve.  It was the Fifth
Circuit, however, that had granted Brown's motion to be released
from prison on bond "pending further proceedings," soon after it
reversed his wire fraud and conspiracy convictions.  Nonetheless,
when it later issued its Judgment as mandate affirming Brown's
"convictions and sentences" for perjury and obstruction of justice,
the Circuit still did not order new sentencing.  Because Brown's
freedom was at issue, the Court heard arguments from the parties
and, by written Memorandum and Order issued January 7, 2008,
described the "quandary" that confronted the trial court as a
result of the Court of Appeals mandate, denied the Government's
motion for Brown's immediate remand to prison for the reasons
stated in the opinion, but observed that "[s]ooner or later, an
appellate decision seems required on whether the Court of Appeals
intended Brown to be imprisoned for a full term of 46 months on the
two counts of conviction that were affirmed."  This serious issue
still lurks in this case.

     The second of the highest priority motions were Defendants'
motions to dismiss based largely on double jeopardy.  The Court
heard extensive arguments on these motions at the November 16th
hearing and again on December 21st.  Actually, the December 21st
hearing had been set primarily to consider Brown's and his

co-Defendants' Motion for Continuance of the January, 2008 trial setting.  The Court at the outset of the hearing indicated that it expected to grant Defendants' motion to try Brown separately, especially given the fact that his convictions for perjury and obstruction of justice had been affirmed by the Fifth Circuit, whereas Bayly and Furst had no convictions.  At the conclusion of Defendants' lengthy arguments for a further trial continuance, the Court granted Brown's motion for continuance, but denied the motions of Bayly and Furst, and stated with no opposition from Brown that Bayly and Furst would proceed to trial first.

On December 21, Brown and his co-Defendants also further argued their motions for dismissal.  For example:

> **[Brown's counsel]:**  The double jeopardy argument goes to the entirety of the conspiracy to commit wire fraud and wire fraud counts, not just the Enron as a victim argument, because the honest services provision was the only way in to any sort of criminal offense in this case on the facts that are alleged in the indictment . . .
>
> * * *
>
> Our motion to dismiss the indictment is absolutely rock solid. . . .

[Transcript of December 21, 2007 Status Conference Hearing, p. 50, ll. 5-10, 18-19 (Document No. 1034) (emphasis added)].

Defendants also vociferously urged the Court, in the event that it did not dismiss the Indictment, to find that Defendants'

arguments were not frivolous and merited an interlocutory appeal. Bayly's counsel led the way:

> So, all I am saying, Your Honor -- and I want to get
> down to my knees practically on this one, Judge; I don't
> know where you are on this -- is, as straight as I can
> say it, Judge -- and we have spent a lot of years
> together at this point -- this argument is as strong as
> the honest services argument. And given that, it is not
> frivolous. And if it is not frivolous, then at a
> minimum, we have to take that up on interlocutory appeal,
> which is another reason, Your Honor, not to put this case
> to trial.

[Transcript of December 21, 2007 Status Conference Hearing, p. 15, ll. 10-18 (Document No. 1034)].

By Memorandum and Order on January 7, 2008, the Court denied Defendants' Motions to Dismiss and granted Defendants' Alternative Motion to Certify their Double Jeopardy Claim as Non-Frivolous so as to enable their interlocutory appeal.[4]

Brown's Next Two Years Prosecuting His Interlocutory Appeal

Brown and his Co-Defendants timely gave notice of their interlocutory appeal to the Court of Appeals in January, 2008. As this Court recognized when it found that Defendants' double jeopardy argument met the threshold of not being frivolous and

---

[4] By a third written Order on January 7, 2008, the Court denied Defendants' request for a Bill of Particulars (Document No. 961), and the Motion to Strike Prejudicial Surplusage in the Indictment (Document No. 962), while granting Defendants' request for severance (Document No. 965) with respect to Brown.

9

warranted an interlocutory appeal, the trial court could not go forward with trial until the Court of Appeals acted. Further pretrial hearings on pending motions were therefore deferred. The Fifth Circuit affirmed this Court's ruling on the double jeopardy challenge, *see* United States v. Brown ("Brown II"), 571 F.3d 492 (5th Cir. 2009), and issued its mandate August 13, 2009.[5] Defendants Bayly and Furst, who were to be tried before Brown, accepted the ruling and the Court entered an amended docket control order with a new trial date of February 8, 2010, which was later continued by agreement of the parties to May 17, 2010.[6] Brown, meanwhile, petitioned the United States Supreme Court for a writ of certiorari on his double jeopardy claim, which was denied November 30, 2009. Brown v. United States, 130 S. Ct. 767 (2009). Brown moved the Supreme Court for rehearing, which was denied January 25, 2010, two years after he filed the appeal. Brown v. United States, 130 S. Ct. 1320. After Brown exhausted his efforts to interest the Supreme Court in his case, the trial court on April 6, 2010, set a pretrial conference for Brown. Soon thereafter, Brown filed the instant Motion to Dismiss for Speedy Trial Act Violation (Document No. 1137), and, as well, a Motion to Dismiss Indictment with Prejudice for Selective Prosecution and in the Interest of Justice (Document No. 1136). Meanwhile, Bayly and Furst, back in the

---

[5] Document No. 1094.

[6] Document No. 1092.

district court, successfully reached resolutions with the Government on their cases. In January, 2010, the Court granted the Government's Motion to Dismiss the Indictment against Bayly, and in April, 2010, the Government and Furst announced an anticipated resolution, which the parties then consummated on May 14, 2010.

## Brown's Pending Motions

When the Supreme Court finally closed the door on Brown's interlocutory appeal by denying his rehearing request, this Court had pending a series of Brown's substantive motions.[7] Consistent with this Court's practice on most major substantive motions throughout the long history of this complex case, the Court expected to conduct initial hearings or additional hearings on these motions.

---

[7] *See, e.g.* James A. Brown's Motion to Compel the Production of Documents and Brady Material (Document No. 948); James A. Brown's Motion for Jencks Material (Document No. 957); Brown's Motion for James Hearing (Document No. 958); Motion for Order Granting Defendant James A. Brown's Motion to Compel Production of Discovery Material (Document No. 974); Defendant James A. Brown's Motion for New Trial (Document No. 1004); and James A. Brown's Motion for Leave to Issue Fed. R. Crim. P. Rule 17(c) Subpoena *Duces Tecum* for Internal Government Documents (Document No. 1013). The intervening interlocutory appeal did not affect the pendency of these motions. For example, in United States v. Grosz, the Fifth Circuit held that a hearing held *after* interlocutory appeal on a motion filed *before* the appeal resulted in tolling the Speedy Trial Act clock from the pre-appeal filing of the motion until the post-appeal hearing. 76 F.3d 1318, 1322-25 (5th Cir. 1996).

Under 18 U.S.C. § 3161(h)(1)(D),[8] all time between the filing of a motion and any required hearing thereon is excludable from Speedy Trial Act calculations, without regard to the reasonableness of the elapsed time. *See* Henderson v. United States, 106 S. Ct. 1871, 1875-76 (1986); United States v. Stephens, 489 F.3d 647, 656 (5th Cir. 2007); United States v. Johnson, 29 F.3d 940, 942-43 (5th Cir. 1994). Determination of whether a hearing is required on any motion for purposes of the Speedy Trial Act is within the district court's discretion. *See* United States v. Smith, 569 F.3d 1209, 1212 (10th Cir. 2009) ("Whether to conduct a hearing is in the sound discretion of the district court, and if a hearing is conducted, the time until the hearing is excluded under the Speedy Trial Act."); United States v. Harris, 491 F.3d 440, 445 (D.C. Cir. 2007 ("[W]here a district court chooses to address a motion at a hearing, there is no precedent for finding the hearing un-required for purposes of Henderson or subsection [D], and some precedent to the contrary." (citing United States v. Stafford, 697 F.2d 1368, 1373 (11th Cir. 1983))); *accord* Stephens, 489 F.3d at 657 n.14 (no tolling of Speedy Trial clock where district court "never noticed the severance motion for a hearing *or otherwise indicated that a hearing was required*" (emphasis added)).

---

[8] The Speedy Trial Act was amended effective October 13, 2008. *See* Pub. L. 110-406, § 13 (2008), 122 Stat. 4291. The amendment eliminated two provisions under 18 U.S.C. § 3161(h)(1), and re-designated § 3161(h)(1)(F) as § 3161(h)(1)(D) without substantive change. The Court refers herein to the provision as amended.

12

Moreover, among the pre-appeal motions Brown filed is his Motion for James Hearing (Document No. 958), which is still pending. In United States v. Bermea, the Fifth Circuit held that pending James motions "tolled the speedy trial clock throughout [defendant's] prosecution because they were ultimately heard and ruled upon during trial." 30 F.3d 1539, 1568. Likewise, Brown's counsel expressly requested the Court "to set a hearing date for Brown's motion for new trial," see Transcript of November 16, 2007 Hearing, p. 5, l. 14 (Document No. 1010), which has yet to be heard.[9]

That no hearing was formally set on Brown's motions until the status conference was held on April 16, 2010, does not change their

---

[9] In fact, courts have found in general that a defendant's request for a hearing on any motion sufficiently indicates that a hearing is required under the Speedy Trial Act. See United States v. Bush, 404 F.3d 263, 274 (4th Cir. 2005) ("If a defendant requests a hearing, and a hearing is offered and declined, we believe that [section 3161(h)(1)(D)] applies, and excludes all of the time up until the offer of the hearing is affirmatively declined. After the defendant declines the offer of a hearing, then the motion is under advisement and [§ 3161(h)(1)(H)] applies."); United States v. Dunn, 345 F.3d 1285, 1294 (11th Cir. 2003) (movant's request for hearing "may suffice to establish the necessity of conducting such a proceeding"); United States v. Salimonu, 182 F.3d 63, 68 (1st Cir. 1999) ("[T]he appellant requested a hearing on his motions, thus acknowledging that one was appropriate. Consequently, we need not discuss the factors that determine whether a given motion 'requires' a hearing." (quoting United States v. Staula, 80 F.3d 596, 601 n.2 (1st Cir. 1996))); accord United States v. Tannehill, 49 F.3d 1049, 1052 n.4 (5th Cir. 1995) ("Because Tannehill requested a hearing, as discussed infra, and because, in any event, it is undisputed that at least one or more of the motions at issue 'required' a hearing, we need not address what causes a hearing to be 'required.'").

13

effect; "the language of Subsection [D] does not impose a requirement that the court formally set a motion for hearing." United States v. Grosz, 76 F.3d 1318, 1325 (5th Cir. 1996). Moreover, the Court is mindful that neither it nor the Government may "manufacture a 'hearing' to avoid the operation of the Speedy Trial Act." Id. at 1325 n.7; see also United States v. Payton, 257 F. App'x 879, 882 (6th Cir. 2007) ("Only a sham hearing will lose the benefit of the [§ 3161(h)(1)(D)] excludable delay provision . . . ."). Such is not the case here. As mentioned above, during the long, complex history of this case, this Court has consistently conducted hearings on nearly every substantive motion, and none has ever been a "sham" hearing. To the contrary, the hearings have frequently helped the Court better to understand the parties' contentions, their differences, and the law to be applied. In keeping with this practice, and quite independently of Speedy Trial Act considerations and before Brown filed the instant motion, the Court determined that hearings on Brown's substantive motions are required. Time under the Speedy Trial Act is therefore tolled during the pendency of these motions.

Here, it was on April 6, 2010, that the Court scheduled a pretrial conference for April 16th (Document No. 1135) with the expectation to set hearings on pending motions that remained at issue, to inquire how Brown had progressed in examining what he had represented as "another world of discovery" required for his

14

retrial, to set a trial date satisfactory for all involved, and to inquire whether the parties could resolve the case without trial. Not until after the conference was set by the Court did Brown file his Motion to Dismiss for Speedy Trial Act Violation.[10]   An analogous sequence of events occurred in United States v. Maxwell:

> I promptly set a date for a scheduling conference so that the hearing on Maxwell's motion that I deemed necessary could be scheduled.  While preparing for this status conference and reviewing the Magistrate Judge's Orders, I discerned that Maxwell might raise [a Speedy Trial Act] claim.  I did not, however, decide that a hearing on her Motion to Sever was necessary in order to defeat Maxwell's STA claim.  Rather, I had determined that a hearing was necessary before learning that there was [a Speedy Trial Act] claim to "defeat."

247 F. Supp. 2d 10, 14 (D. Mass. 2002).  The First Circuit affirmed the district court's denial of the Speedy Trial Act dismissal, expressly noting the court's following of its regular practice and its explicit statement that it did not schedule the hearing solely to defeat the Speedy Trial Act motion.  United States v. Maxwell, 351 F.3d 3, 39-40 (1st Cir. 2003).  Likewise, in United States v. Dunn, the Eleventh Circuit upheld a district court's denial of a motion to dismiss under the Speedy Trial Act when the court based its denial upon a concurrent determination that a hearing was necessary on a then-outstanding motion.  345 F.3d 1285, 1293-94 (11th Cir. 2003).

---

[10] *See* Document No. 1151 at 7-8.

15

Finally, one cannot retrace this procedural history without being impressed by Brown's aggressive defense efforts while being fully cognizant that such necessarily would delay his retrial over a period of years--to prepare his defense for the retrial "from ground up," to explore a new "world of discovery," to take and pursue even to the Supreme Court an interlocutory appeal, to move and request hearing for a new trial on his convictions already affirmed by the Court of Appeals, and on and on.  Brown has filed a plethora of motions, which the Court regards as serious motions filed in good faith, supported with what now totals more than a thousand pages of briefing.  With all due respect, Brown's defense positions, strategies, and actions since this case was first reversed and remanded in 2006, and his successes in persuading the Court to grant his motions for continuances and to allow his interlocutory appeal, fully demonstrate that he has not been denied a speedy trial other than by his own hand.  Brown has in no way suffered a Speedy Trial Act violation.  *See* United States v. Westbrook, 119 F.3d 1176, 1188 (5th Cir. 1997) (with regards to tolling Speedy Trial clock under Section 3161(h)(7) ends-of-justice continuance, defendant may not seek "to turn the benefit he accepted into an error that would undo his conviction . . ." (quoting United States v. Eakes, 783 F.2d 499, 503 (5th Cir. 1986))); United States v. Kington, 875 F.2d 1091, 1108 (5th Cir. 1989) (noting "the sensible maxim that defendants ought not to be

16

able to claim relief on the basis of delays which they themselves deliberately caused"); <u>United Stats v. Mentz</u>, 840 F.2d 315, 331 (6th Cir. 1988) ("If we were to conclude that the delay caused by the defendant's plea vacillation did not stop the speedy trial clock, we would be rewarding the defendant by enhancing his chances of dismissal of the indictment. 'In essence, [the defendant] would have successfully worked both sides of the street, lulling the court and prosecution into a false sense of security only to turn around later and use the . . . leisurely pace of the case as grounds for dismissal." (quoting <u>United States v. Pringle</u>, 751 F.2d 419, 434 (1st Cir. 1984))).

Accordingly, Defendant James A. Brown's Motion to Dismiss for Speedy Trial Act Violation (Document No. 1137) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 15th day of June, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

17